UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

EDWINA PAGE,                          )
                                      )
          Plaintiff,                  )
                                      )    No. 4:08CV01569 FRB
                                      )
     v.                               )
                                      )
                                      )
MICHAEL J. ASTRUE, Commissioner       )
of Social Security,                   )
                                      )
          Defendant.                  )


**MEMORANDUM AND ORDER**


          This matter is on appeal for review of an adverse ruling
by the Social Security Administration.  All matters are pending
before the undersigned United States Magistrate Judge, with consent
of the parties, pursuant to 28 U.S.C. § 636(c).

**I.   Procedural Background**

          Plaintiff filed an application for Disability Insurance
Benefits ("DIB"), alleging disability as of February 11, 2005.
(Administrative Transcript ("Tr.") at 73-76).[1]  Plaintiff's
application was denied, and she requested a hearing before an
administrative law judge ("ALJ").  (Tr. 50).  On January 15, 2006,
a hearing was held before ALJ James B. Griffith, (Tr. 22-42), and
on February 13, 2008, ALJ Griffith issued his decision denying

---

[1]The record indicates that plaintiff's protective filing date was June
16, 2006, and that her written application was dated July 10, 2006.  (Tr. 24;
73-76).

-1-

plaintiff's application.  (Tr. 10-19).

Plaintiff sought review of the ALJ's decision from defendant Agency's Appeals Council, (Tr. 5-6), and on September 16, 2008, the Appeals Council denied plaintiff's request.  (Tr. 1-4). The ALJ's decision thus stands as the final decision of the Commissioner.  42 U.S.C. § 405(g).

## II.  Evidence Before the ALJ

A.  <u>Medical Records</u>

The record indicates that an MRI of plaintiff's cervical spine was performed at DePaul Health Center on January 4, 2005, and revealed mild central canal stenosis at C5-6, and neural foraminal narrowing from C3-4 through C6-7.  (Tr. 145-46).

On March 14, 2005, plaintiff saw Matthew Miriani, D.O., of the Family Medicine Clinic, with complaints of stomach and neck pain.  (Tr. 156).  It was noted that plaintiff had degenerative disk disease.  (<u>Id.</u>)  Upon exam, plaintiff had neck pain with range of motion testing, and Dr. Miriani recommended that plaintiff seek a pain management consultation.  (<u>Id.</u>)

On March 28, 2005, plaintiff saw Stephen G. Smith, M.D., of the Pain Management Center at Christian Hospital for an initial consultation.  (Tr. 147-50; 233-35).  Plaintiff stated that she had neck and left arm pain "all the time;" that it had begun four years ago; and that she had some improvement with heat and rest.  (Tr. 150, 235).  Plaintiff rated her pain at a 7 on a 1-10 scale.  (<u>Id.</u>)

She denied having any problems ambulating, and, when asked whether she had any physical disabilities, she answered "no." (<u>Id.</u>)

On April 19, 2005, plaintiff returned to Dr. Miriani for a checkup related to diabetes and hypertension, and it was noted that her blood pressure had been "running high." (Tr. 155). It was also noted that plaintiff was receiving treatment for her neck pain. (<u>Id.</u>) Plaintiff reported feeling well otherwise. (<u>Id.</u>) On September 9, 2005, she returned to Dr. Miriani for a checkup related to diabetes and reported that she was feeling better, and that she had resumed taking Avandamet.[2] (Tr. 154). It was noted that her blood sugar had been "running a little bit high," but she was taking her medication once daily and her blood sugar was better controlled. (<u>Id.</u>) Review of symptoms was otherwise negative, and Dr. Miriani increased plaintiff's Avandamet dosage to twice daily. (<u>Id.</u>)

On October 24, 2005, plaintiff returned to Dr. Miriani and reported no problems; that she felt well; and that her blood sugar was improved. (Tr. 153). She reported that, due to side effects, she had stopped taking medication that had been prescribed for hypertension. (<u>Id.</u>) Dr. Miriani noted that plaintiff had diabetes mellitus and uncontrolled hypertension, and encouraged her to take her hypertension medication. (<u>Id.</u>)

On May 9, 2006, plaintiff returned to Dr. Miriani, and

---

[2]Avandamet, or Rosiglitazone, is used along with a diet and exercise program and sometimes with one or more other medications to treat type 2 diabetes. <u>http://www.nlm.nih.gov/medlineplus/druginfo/meds/a699023.html</u>

Dr. Miriani noted that plaintiff had "some very vague nonspecific complaints." (Tr. 163). She reported that she had a slight decrease in appetite, and that she had stopped taking her hypertension medications, stating that they did not agree with her. (Id.) She reported continued chronic neck pain which extended into her chest area, and also complained of pain in her right side. (Id.) Dr. Miriani noted that he asked plaintiff about her diabetes, and noted that plaintiff said that she checked her sugar "on occasion" and that it was doing well, but that she did not take her medicine on a regular basis. (Id.)

On August 15, 2006, J. Moses completed a Physical Residual Functional Capacity Assessment. (Tr. 166-71). It was opined that plaintiff could occasionally lift and carry 20 pounds and frequently lift 10; stand, walk and sit for six hours in an eight-hour workday; and push and pull without limitation. (Tr. 167). It was also opined that plaintiff should never climb a ladder, rope or scaffolds, but that she could occasionally perform other postural activities. (Tr. 169). No visual, manipulative, communicative or environmental limitations were established. (Id.)

On October 9, 2006, plaintiff saw Jessica Smith, M.D., to establish care, having transferred from another primary care physician. (Tr. 177). It was noted that plaintiff had been

compliant with her diabetes medication, but not with Cozaar,[3] her hypertension medication. (_Id._)  She reported "some occasional blurred vision." (_Id._)  Plaintiff also reported a burning feeling on the bottoms of her feet, and also stated that she had recently "jammed" her toe, which was swollen and painful. (_Id._)  Plaintiff reported that the pain clinic wanted to perform epidural injections, but her blood pressure was too high, and she has not followed up since then. (Tr. 177).  Plaintiff also complained of general fatigue. (_Id._)

Upon examination, plaintiff's blood pressure was elevated, and her right great toe was swollen. (_Id._)  She was diagnosed with diabetes and hypertension, and her Cozaar prescription was replaced with Lisinopril.[4] (_Id._)  An x-ray of her right great toe was ordered, and she was advised to follow up in one month. (Tr. 177).

X-ray of plaintiff's right foot, performed at DePaul Health Center on October 24, 2006, revealed a fracture of the distal phalanx of the right great toe. (Tr. 184).

On November 16, 2006, plaintiff underwent facet joint injection at the Center for Interventional Pain Management. (Tr.

---

[3]Cozaar, or Losartan, is used alone or in combination with other drugs to control hypertension.
http://www.nlm.nih.gov/medlineplus/druginfo/meds/a695008.html

[4]Lisinopril, also known by the brand name Zestril, is used to treat hypertension.
http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a692051.html

185).

Plaintiff returned to Dr. Smith on December 5, 2006 for follow up. (Tr. 175). She complained of lower central chest pain and upper abdominal pain. (Id.) Plaintiff also complained of some gastritis, accompanied by nausea but no vomiting. (Id.) She reported that she had been compliant with her medication, and that Lisinopril caused no adverse effects. (Id.) Plaintiff was given samples of her medications. (Tr. 175).

On March 5, 2007, plaintiff was seen at the John C. Murphy Health Center (also "Murphy Clinic") by Jamal Makhoul, M.D., with complaints of a past history and hypertension and diabetes; a headache; and a need for medication refills. (Tr. 199). She had no other complaints. (Id.) Physical examination was normal. (Tr. 200). She was given Avandia,[5] Metformin,[6] Lisinopril, and Lovastatin,[7] and advised to take Ibuprofen and Methocarbamol[8] for backache. (Id.)

On March 7, 2007, plaintiff was seen at the Murphy Clinic

---

[5]Avandia, or Rosiglitazone, is used along with a diet and exercise program and sometimes with one or more other medications to treat type 2 diabetes. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a699023.html

[6]Metformin is used alone or in combination with other medications, including insulin, to control Type 2 diabetes. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a696005.html

[7]Lovastatin is used together with lifestyle changes (diet, weight-loss, exercise) to reduce the amount of cholesterol and other fatty substances in the blood. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a688006.html

[8]Methocarbamol, a muscle relaxant, is used with rest, physical therapy, and other measures to relax muscles and relieve pain and discomfort caused by strains, sprains, and other muscle injuries. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682579.html

by Larry Stewart, M.D., for a diabetic eye exam. (Tr. 196). Plaintiff had no complaints, and her eye exam was normal. (Tr. 196-97). Dr. Stewart noted that plaintiff had "uncontrolled" diabetes without mention of complication, and also noted that plaintiff was cautioned on driving, and was given shades. (Tr. 198). Dr. Stewart also noted that plaintiff was at "low" risk for complications. (Id.)

Plaintiff returned to the Murphy Clinic on March 21, 2007 for gynecological care. (Tr. 193). On May 30, 2007, plaintiff presented to the Murphy Clinic and saw Dr. Makhoul, stating that she needed medication refills and that she wanted a "TST for Daycare work." (Tr. 190). The notation "follow up visit, no complaints" appears. (Id.) It was noted that plaintiff had diabetes mellitus without mention of complication, "uncontrolled." (Tr. 191). Plaintiff saw Dr. Makhoul again on July 26, 2007 with complaints of lower abdominal pain and back pain. (Tr. 187). Plaintiff had no other complaints. (Tr. 187-88). Examination was normal, and plaintiff was assessed with an unspecified backache. (Tr. 188-89).

On December 28, 2007, Dr. Smith completed a physical residual functional capacity questionnaire. (Tr. 223-27). Dr. Smith noted that she had seen plaintiff only twice, and noted that plaintiff had complained of dizziness, burning on the bottoms of her feet, and fatigue. (Tr. 223). Dr. Smith declined to offer an opinion relevant to plaintiff's residual functional capacity,

stating that she had not seen plaintiff in over a year.  (Tr. 223-27).

B.  <u>Hearing Testimony</u>

During the administrative hearing, plaintiff was represented by counsel, and responded to questions from the ALJ and counsel.  Plaintiff testified that she was single; had six children ranging in age from 19 to 40 years; and that her youngest child lived with her.  (Tr. 29).  Plaintiff testified that she last worked in February of 2005 as a quality control inspector in a bakery, and had held that position for 13 years.[9]  (<u>Id.</u>)  When asked to describe this job, plaintiff testified that she arrived at work early in the morning; inspected all of the equipment and machinery; and checked the building to ensure cleanliness, and the absence of rodents or other pests. (<u>Id.</u>) Plaintiff testified that the remainder of her job required her to bake bread from frozen dough, and that, to accomplish her job, she had to remain on her feet 75% of the time, and lift up to fifty pounds. (Tr. 30).  Plaintiff testified that she spent 25% of her workday completing a report regarding what had transpired during the day.  (Tr. 31).  Plaintiff testified that she had also worked for this same employer as a line inspector and as a machine operator, both of which required her to stand throughout the day.  (Tr. 32).

---

[9]Plaintiff testified that the bakery changed ownership several times, and was known as Quaker Oats, Maplehurst Bakery, and Petroskey's.  (Tr. 36-37).

Plaintiff testified that she currently provided child care for her 22-month old grandchild for five hours per day. (Tr. 33-34). Plaintiff testified that the state paid her $15.00 per day for this work. (Tr. 33-34). Plaintiff testified that she provided this child care during the night; that her daughter put the child to bed before leaving; and that her only duty was to be present. (Tr. 34).

The ALJ then heard testimony from Jeffrey F. Magrowski, Ph.D., a vocational expert ("VE"). Dr. Magrowski noted that it appeared that plaintiff had worked as an office cleaner, and plaintiff then testified that she worked as an office cleaner for a company called Calgon, and also for a company called Barry Cleaning Services, and that she also cleaned houses. (Tr. 36). Plaintiff also testified that, when she was "very young," she worked "through agencies" assembling plastic toys and other small plastic items. (Id.)

Dr. Magrowski characterized plaintiff's past work as a quality controller, a semi-skilled job at the light exertional level. (Tr. 37). Dr. Magrowski testified that plaintiff's line inspection work was also semi-skilled and that, while she performed it at the medium exertional level, it could also be performed at the light exertional level. (Id.) Dr. Magrowski testified that plaintiff's prior factory/assembly work, and her prior cleaning work, would be classified as unskilled and medium. (Tr. 38). Dr. Magrowski testified that plaintiff's prior factory/assembly work

could be performed at the light and sedentary exertional levels. (<u>Id.</u>)

The ALJ asked Dr. Magrowski regarding transferability of skills from plaintiff's past work in quality control and as a line inspector, and Dr. Magrowski testified that, regarding her inspection job, plaintiff could return to her past work in bakery quality control as it is done in the national economy at the light level. (Tr. 39). Dr. Magrowski testified that similar inspector jobs existed at the sedentary level, and included jobs such as inspecting small objects like eyeglasses. (<u>Id.</u>) Dr. Magrowski testified that there would be "very little" adjustment necessary for plaintiff to switch from her bakery worker job to an inspector job. (<u>Id.</u>)

Dr. Magrowski testified that, at around age 49 or 50, people were generally less able to transfer to other jobs. (Tr. 40). Dr. Magrowski testified that, based upon his experience, plaintiff would be able to transfer her skills, and also stated that her job, as she described it, could be classified as skilled. (<u>Id.</u>) Dr. Magrowski testified that plaintiff's skills from her job at the bakery could be transferred to a job inspecting eyeglasses, noting that plaintiff testified that, while working at the bakery, she inspected machinery, kept track of the machines, and wrote reports. (Tr. 40-41). Dr. Magrowski testified that, while someone who has never inspected eyeglasses before might need some training, such training would be very slight. (Tr. 41). Dr. Magrowski

-10-

testified that a person who frequently experienced blurred vision would have difficulty performing an eyeglass inspection job. (Tr. 41-42).

III.    **The ALJ's Decision**

The ALJ determined that plaintiff had not engaged in substantial gainful activity since February 11, 2005, her alleged onset date4. (Tr. 12). The ALJ determined that plaintiff had the severe impairments of adult onset type II diabetes mellitus; obesity, coronary artery disease, arthritis, and degenerative disc disease, and also noted that plaintiff occasionally had blurred vision attributed to her adult onset type II diabetes mellitus. (Id.) The ALJ determined that plaintiff did not have an impairment, or combination of impairments, that met or medically equaled a listed impairment. (Tr. 13).

The ALJ determined that plaintiff was unable to perform any of her past relevant work, but that she retained the residual functional capacity ("RFC") to perform the full range of sedentary work. (Tr. 13). In reaching this determination, the ALJ analyzed plaintiff's credibility, citing 20 C.F.R. § 404.1529 and listing all of the relevant factors, and discredited plaintiff's allegations of pain and other symptoms precluding all work. (Tr. 13-14).

The ALJ noted that plaintiff was defined by the Social Security Act ("Act") as an individual of advanced age. (Tr. 17).

The ALJ relied upon the Medical-Vocational Guidelines to direct a finding that plaintiff was not disabled. In so doing, the ALJ determined that plaintiff had acquired work skills from her past relevant work, and that, considering her age, education, work experience, and residual functional capacity, she had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy. In making this finding, the ALJ relied upon the vocational expert's testimony that plaintiff would require little to no vocational adjustment to transfer her job skills to that of small-parts inspector. The ALJ concluded that plaintiff was not under a disability, as defined in the Act, from her alleged date of onset through the date of the decision. (Tr. 18).

## IV.    Discussion

To be eligible for benefits under the Social Security Act, a plaintiff must prove that she is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Secretary of Health & Human Services, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines "disability" in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace. See 42 U.S.C. §§ 423(d)(1)(A), 1382c (a)(3)(A). Specifically, a "disability" under the Act is an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." Id. The Act further specifies that a person must be both unable to do her previous work and unable, "considering [her] age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987); Heckler v. Campbell, 461 U.S. 458, 459-460 (1983).

To determine whether a claimant is disabled, the Commissioner utilizes a five-step evaluation process. See 20 C.F.R. §§ 404.1520; Bowen, 482 U.S. at 140-42. The Commissioner begins by considering the claimant's work activity. If the claimant is engaged in substantial gainful activity, disability benefits are denied. Next, the Commissioner decides whether the claimant has a "severe impairment," meaning one which significantly limits his ability to do basic work activities. If the claimant's impairment is not severe, then she is not disabled. If the claimant's impairment is severe, the Commissioner then determines whether it meets or is equal to one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1. If the claimant's impairment is equivalent to one of the listed impairments, she is conclusively disabled. At the fourth step, the Commissioner establishes whether

-13-

the claimant has the residual functional capacity to perform her past relevant work. If so, the claimant is not disabled.  If not, the burden then shifts to the Commissioner to prove that there are other jobs that exist in substantial numbers in the national economy that the claimant can perform.  Pearsall, 274 F.3d at 1217, Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir.2000).  Absent such proof, the claimant is declared disabled and becomes entitled to disability benefits.

The Commissioner's findings are conclusive upon this Court if they are supported by substantial evidence.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Young o/b/o Trice v. Shalala, 52 F.3d 200 (8th Cir. 1995) (citing Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993)).  Substantial evidence is less than a preponderance, but enough that a reasonable person would find adequate to support the conclusion.  Briggs v. Callahan, 139 F.3d 606, 608 (8th Cir. 1998).  To determine whether the Commissioner's decision is supported by substantial evidence, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ;

2. The claimant's vocational factors;

3. The medical evidence from treating and consulting physicians;

4. The claimant's subjective complaints relating to exertional and non-exertional activities and impairments;

5. Any corroboration by third parties of the claimant's

impairments;

6. The testimony of vocational experts, when required, which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Services, 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The Court must also consider any "evidence which fairly detracts from the ALJ's findings." Groeper v. Sullivan, 932 F.2d 1234, 1237 (8th Cir. 1991); see also Briggs, 139 F.3d at 608. However, where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence also supports a different outcome. Jones ex rel. Morris v. Barnhart, 315 F.3d 974, 977 (8th Cir. 2003) (citing Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001)).

In the case at bar, plaintiff argues that the ALJ's decision is not supported by substantial evidence because he failed to completely analyze plaintiff's claim, inasmuch as he failed to determine whether blurred vision is a severe medically determinable impairment. Plaintiff also argues that the ALJ erroneously failed to include the effects of blurred vision on plaintiff's residual functional capacity. In response, the Commissioner contends that the ALJ's decision is supported by substantial evidence on the record as a whole.

A.    Plaintiff's Impairments

In his decision, the ALJ wrote that he determined that plaintiff had the severe impairments of adult onset type II diabetes mellitus, obesity, coronary artery disease, arthritis and degenerative disc disease. Plaintiff alleges that the ALJ conducted an incomplete analysis of her claim, inasmuch as he failed to determine whether blurred vision was a severe impairment. Plaintiff also argues that it is unclear from the decision exactly which impairments the ALJ considered severe. Review of the decision reveals no error.

As noted above, at step two of the sequential evaluation process, the ALJ must determine whether the claimant has an impairment, or combination of impairments, that significantly limits her ability to perform basic work activities. If an impairment significantly limits the claimant's physical or mental ability to do basic work, it is considered to be a "severe" impairment. Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997); Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992); 20 C.F.R. §§ 404.1520(c). The ALJ considers all impairments, including those that are less than severe, in determining the claimant's RFC. 20 C.F.R. § 404.1545(e).

The ALJ's decision reads as follows:

**3. The claimant has the following severe impairments: adult onset type II diabetes mellitus, obesity, coronary artery disease, arthritis and degenerative disc disease (20 C.F.R. 404.1520(c)).**

> The claimant occasionally has blurred vision
> attributed to her adult onset type II diabetes
> mellitus. She is mildly obese and x-rays show
> some degenerative changes affecting her hips.
> (Exhibit 8F/36) Degenerative changes to her
> cervical spine (Exhibit 1F) and lumbar spine
> (Exhibit 8F/35) are identified by radiological
> examinations. She is being treated for
> coronary artery disease.
>
> (Tr. 12) (emphasis in original).

Plaintiff argues that the ALJ failed to determine whether blurred vision was a severe impairment. In support, plaintiff notes that, although blurred vision is not listed in the first of the two above paragraphs, it is listed in the second, and degenerative disc disease and coronary artery disease are listed in both the first and second paragraphs, making the decision unclear as to which impairments are severe, and whether any impairments are non-severe. (Docket No. 13 at 4-5).

The ALJ's decision is very clear regarding which impairments he determined were severe. As quoted above, the ALJ specifically wrote, "[t]he claimant has the following severe impairments," and then listed those impairments. (Tr. 12). The ALJ's mention of blurred vision in the same (subsequent) paragraph as two of plaintiff's severe impairments creates no confusion regarding which of plaintiff's impairments he determined were severe.

Also clear from the ALJ's decision is the fact that he fully analyzed plaintiff's claim, including plaintiff's complaints

of blurred vision, but determined that blurred vision was not a severe impairment. In his decision, the ALJ discussed all of the medical evidence of record, including plaintiff's complaint to Dr. Smith of "occasional" blurred vision, her eye examination with Dr. Stewart, and the fact that Dr. Stewart cautioned her about driving.

In further support of her argument, plaintiff also notes that, in a subsequent paragraph of the ALJ's decision, he wrote that plaintiff's "occasionally blurred vision is attributed to her diabetes, but does not constitute listing-level end organ damage." (Tr. 13). Plaintiff argues that an impairment does not have to meet a Listing in order to be considered severe. Contrary to plaintiff's argument, there is no error, or cause to conclude that there was confusion in the ALJ's decision. Visual impairment is an element of the Listing for diabetes. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 9.08C. The Regulations specify that, in evaluating whether a claimant meets the Listing for diabetes, the ALJ must evaluate any alleged visual impairment under certain criteria. <u>See</u> <u>Id.</u> As the Commissioner correctly notes, the ALJ was merely explaining, in the context of evaluating plaintiff's claim of diabetes, that her blurred vision did not satisfy an element of the Listing for diabetes. It does not appear that the ALJ was under the mistaken impression that an impairment had to meet a listing in order to be severe.

Review of the ALJ's decision reveals that he thoroughly analyzed all of plaintiff's impairments, and set forth with

sufficient clarity those he considered severe.  It is clear that the ALJ fully analyzed plaintiff's claim, including her complaints of blurred vision, and concluded that blurred vision was not a severe impairment.  Plaintiff's claim is without merit.

    B.    RFC Determination

        The ALJ in this case determined that plaintiff retained the residual functional capacity to perform the full range of sedentary work.  Plaintiff alleges that the ALJ erroneously omitted a visual limitation from her RFC.  Review of the decision reveals no error.

        Residual functional capacity is what a claimant can still do despite her limitations.  20 C.F.R. § 404.1545; Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001).  The ALJ must assess a claimant's RFC based upon all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations.  Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995); Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005). A claimant's RFC is a medical question, and there must be some medical evidence, along with other relevant, credible evidence in the record, to support the ALJ's RFC determination.  Id.; Hutsell v. Massanari, 259 F.3d 707, 711-12 (8th Cir. 2001); Lauer, 245 F.3d at 703-04; McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000).  An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand.

-19-

<u>Hutsell</u>, 259 F.3d at 712. However, although an ALJ must determine the claimant's RFC based upon all relevant evidence, the ALJ is not required to produce evidence and affirmatively prove that a claimant can lift a certain weight or walk a certain distance. <u>Pearsall</u>, 274 F.3d at 1217 (8th Cir. 2001); <u>McKinney</u>, 228 F.3d at 863. The claimant bears the burden of establishing her RFC. <u>Goff</u>, 421 F.3d at 790.[10]

Plaintiff argues that the ALJ's RFC determination is in error because he failed to include the effects of blurred vision in her residual functional capacity. In support, plaintiff notes that the vocational expert testified that blurred vision "that occurred

---

[10]Although plaintiff herein does not specifically challenge the ALJ's credibility determination, she does challenge the RFC determination. Because the ALJ must first evaluate a claimant's credibility before determining her RFC, <u>Wagner v. Astrue</u>, 499 F.3d 842, 851 (8th Cir. 2007) (citing <u>Pearsall</u>, 274 F.3d at 1217) (before determining the claimant's residual functional capacity, the ALJ must evaluate the credibility of the claimant's subjective complaints), the undersigned conducted a full analysis of the ALJ's credibility determination.

In assessing plaintiff's credibility, the ALJ acknowledged his duty to consider all of the evidence of record relevant to plaintiff's complaints, and cited the Regulation and the Social Security Rulings corresponding with the Eighth Circuit's decision in <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1321-22 (8th Cir. 1984), listed all of the relevant factors, and set forth numerous inconsistencies in the record detracting from plaintiff's credibility. For example, the ALJ noted the absence of medical opinions that plaintiff was unable to work. <u>Depover v. Barnhart</u>, 349 F.3d 563, 567 (8th Cir. 2003) (ALJ properly discredited plaintiff's subjective complaints when no physician opined that he was unable to work). The ALJ also noted plaintiff's failure to consistently comply with treatment. <u>O'Donnell v. Barnhart</u>, 318 F.3d 811, 819 (8th Cir. 2003) (failure to follow prescribed treatment may undermine credibility). The ALJ also noted that plaintiff left her job because it ended, not due to physical inability. <u>Browning v. Sullivan</u>, 958 F.2d 817, 823 (8th Cir. 1992) (finding that a cessation of work for reasons unrelated to medical condition militated against a finding of disability).

Where adequately explained and supported, credibility findings are for the ALJ to make. <u>See Tang v. Apfel</u>, 205 F.3d 1084, 1087 (8th Cir. 2000). The undersigned has carefully reviewed the record, and believes that the ALJ's finding that plaintiff's subjective complaints were not fully credible was adequately explained, and was supported by substantial evidence on the record as a whole.

frequently" would impede the ability to perform a job as an eyeglass inspector. (Tr. 41-42). Plaintiff argues that, in light of such testimony, the ALJ was obligated to determine whether plaintiff suffered from blurred vision, and if so, the frequency thereof. Plaintiff also argues that she described vision problems to Dr. Smith, and also mentioned blurred vision in forms she submitted in support of her application.[11]

In his decision, while the ALJ did not provide a detailed explanation of why there was no visual limitation in plaintiff's RFC, he conducted an exhaustive analysis of all of the medical evidence of record, including the evidence related to plaintiff's complaints of blurred vision, and the undersigned therefore concludes that the ALJ properly considered plaintiff's allegations of blurred vision in determining her RFC. Depover v. Barnhart, 349 F.3d 563, 567 (8th Cir. 2003) (because the functions the ALJ specifically addressed in the RFC were those in which he found a limitation, the court could reasonably believe that the functions he omitted were those that were not limited). As explained above, it is clear from the ALJ's decision that he determined that plaintiff's blurred vision was not a severe impairment, and this determination is supported by the record. No physician, including Dr. Stewart, who conducted an eye examination, diagnosed plaintiff

_____

[11]Plaintiff also suggests again that the hearing decision was unclear regarding whether blurred vision was a severe impairment. However, as discussed in detail above, there was no confusion or lack of clarity in the ALJ's decision regarding whether blurred vision was a severe impairment.

with a vision impairment. In his decision, the ALJ noted plaintiff's eye exam with Dr. Stewart, which was normal, and noted that Dr. Stewart cautioned plaintiff about driving and advised her to follow up with him in one year. While the lack of objective medical evidence is not dispositive, it is an important factor, and the ALJ is entitled to consider the fact that there is no objective medical evidence to support allegations of limitations. <u>Battles v. Sullivan</u>, 902 F.2d 657, 659 (8th Cir. 1990) (ALJ properly denied benefits to a claimant who had no medical evidence indicating a serious impairment during the relevant time); <u>Johnson v. Chater</u>, 87 F.3d 1015, 1017-18 (8th Cir. 1996) (it is proper for an ALJ to consider the lack of reliable medical opinions to support a claimant's allegations of disabling conditions; in fact, this was noted to be the "strongest support" in the record for the ALJ's determination).

Consistent with the ALJ's observations, the undersigned notes that Dr. Stewart found that plaintiff had diabetes without mention of complication, and opined that her risk for such complications was low, and that plaintiff did not seek ongoing care for vision problems. <u>See</u> <u>Shannon v. Chater</u>, 54 F.3d 484, 487 (8th Cir. 1995) (the failure to seek medical treatment may indicate the relative severity of a medical problem).

The ALJ also noted that plaintiff complained of vision problems on only one occasion, to Dr. Smith, and that, when she did so, she described the problem as occasional. In addition, the

-22-

undersigned notes that, when plaintiff saw Dr. Makhoul and Dr. Stewart, it is noted that no vision complaints were present. The ALJ was entitled to consider the fact that plaintiff did not routinely complain of vision problems to her doctors. See Anderson, 51 F.3d at 780 (ALJ properly denied benefits for back when claimant did not complain of back pain while receiving other treatment).

To support her argument regarding the ALJ's RFC, plaintiff appears to rely primarily upon her subjective complaints of blurred vision. However, as discussed above, the ALJ properly analyzed plaintiff's subjective complaints, and his decision discrediting them is supported by substantial evidence. In addition, the complaints plaintiff mentions in her brief are primarily related to driving at night, which is irrelevant to the ALJ's RFC determination.

In addition, no error stems from the VE's testimony. The VE in this case testified that blurred vision "that occurred frequently" would create difficulty in performing the job of eyeglass inspector. (Tr. 41-42). As discussed above, there is no evidence in the record supporting the conclusion that plaintiff "frequently" experienced blurred vision. To the contrary, the record supports the conclusion that plaintiff's blurred vision occurred only occasionally. As noted above, plaintiff did not routinely complain of blurred vision when receiving medical treatment, and on the one occasion she did mention such complaints,

she described the problem as occasional.  There is no error in the omission of a visual limitation in plaintiff's RFC.

Review of the ALJ's decision reveals that he properly exercised his discretion and acted within his statutory authority in evaluating all of the evidence of record as a whole.  The ALJ based his decision on all of the credible, relevant evidence of record.  For the foregoing reasons, the undersigned determines that the ALJ's RFC determination is supported by substantial evidence on the record as a whole.  Therefore, on the claims that plaintiff raises, the Commissioner's decision in this matter should be affirmed.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that the Commissioner's decision be affirmed, and that plaintiff's Complaint be dismissed with prejudice.

Frederick R. Buckles
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of March, 2010.